897 So.2d 726 (2004)
BOGUE LUSA WATERWORKS DISTRICT and WASHINGTON AREA RESOURCES NETWORK
v.
THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY and J. Dale Givens, Secretary.
No. 2004 CA 0061.
Court of Appeal of Louisiana, First Circuit.
December 17, 2004.
*727 Richard M. Exnicios, George H. Penn, New Orleans, Counsel for Plaintiff/Appellant Washington Area Resources Network.
H. Alston Johnson, III, Steven J. Levine, Patrick O'Hara, John B. Shortess, Baton Rouge, Counsel for Defendant/Appellee Washington Parish Energy Center, LLC.
Adam Babich, New Orleans, Counsel for Plaintiff Bogue Lusa Water Works District.
Donald Trahan, Baton Rouge, Counsel for Defendant Louisiana Department of Environmental Quality.
Nicole Duarte Martin, New Orleans, Counsel for Cogentrix Energy, Inc.
Before: WHIPPLE, FITZSIMMONS, and DOWNING, JJ.
FITZSIMMONS, J.
Washington Area Resource Network (WARN) appeals a trial court judgment maintaining a peremptory exception raising the objection of no right of action asserted by Washington Parish Energy Center (WPEC) and the grant of WPEC's opposition to supplemental and amending petitions filed by WARN. Following our review of the record and applicable law, the trial court judgment is affirmed, in part, reversed in part, and the case is remanded.
Bogue Lusa Waterworks and WARN filed a petition against the Louisiana Department of Environmental Quality (DEQ) and Dale Givens, Secretary of DEQ, contesting DEQ's June 25, 2000 decision to issue permits to Cogentrix Energy, Inc. for a natural gas-fired electrical power plant. The permits were subsequently purchased by Calpine Central, L.P., which then formed Washington Parish Energy Center, LLC (WPEC), to which DEQ transferred the permits.

PEREMPTORY EXCEPTION RAISING THE OBJECTION OF NO RIGHT OF ACTION
WPEC filed exceptions raising the objection of no right of action and the lack of procedural capacity. La. C.C.P. arts. 926 and 927. In its peremptory exception, WPEC alleged that WARN was not a juridical entity; therefore, it possessed no right of action to file a petition for judicial review. Specifically, WPEC maintained *728 that WARN did not meet the requirements of an unincorporated association such that it formed a separate juridical person distinct from its members. The evidence submitted in support of WPEC's exception based on the objection of no right of action consisted of deposition testimony by Dr. Anthony Palazzo, a blank membership form for WARN, and articles of incorporation for WARN that were returned by the Secretary of State as of May 22, 1996 due to a "failure to meet filing requirements."
The deposition testimony given by Dr. Palazzo revealed that his wife, Lynn Palazzo,[1] who was president of the association, had organized WARN with the help of Louisiana Environmental Action Network (LEAN) during the latter part of 1995 and early portion of 1996. She had consistently handled most of the "day to day" operations. At the time of its inception, Dr. Palazzo stated that Mrs. Palazzo, he, and eight other unnamed people were part of the organization. Dr. Palazzo testified that dues in the past had been $10.00 per year; however, no person had been excluded on the basis of nonpayment. The decision to file the instant lawsuit had been made by Dr. and Mrs. Palazzo on behalf of the association. Dr. Palazzo further stated that he believed that he and Mrs. Palazzo were the members who lived closest to the proposed power plant, which was approximately one mile from their home.
In oral reasons for judgment, the trial court indicated that it was relying on the factors enunciated in Ermert v. Hartford Insurance Company, 559 So.2d 467 (La.1990), to conclude that WARN did not form a separate legal entity or become a juridical person. Our review of the precepts and factors displayed in Ermert, as well as associated law, leads to a contrasting legal interpretation of the organizational status of WARN.
In Ermert, the Louisiana Supreme Court observed that under both civilian and common law theory, an unincorporated association was established in the same manner as a partnership, i.e., pursuant to a "contract between two or more persons to combine their efforts, resources, knowledge or activities for a purpose other than profit or commercial benefit." Ermert, 559 So.2d at 473. The common intent of the parties forms the controlling element in contract interpretation. Ermert, 559 So.2d at 474; La. C.C.2045. The court distinguished an unincorporated association from a group that came into existence, or commenced merely by virtue of the fortuitous creation of a community of interest, or the fact that a number of individuals had simply acted together. Id. In contrast to the factual scenario at hand, the hunters in Ermert never purported to have formed an association. The court in Ermert noted that "[w]hile the parties need not specifically intend or have knowledge of all the legal ramifications of juridical personality, they must at least conceive of their creation as a being or thing separate from themselves." Id. The mere fact that for years the hunters in Ermert had shared expenses to participate at a hunting camp and had written obsolete safety rules at one point in time did not impose upon the group the status of an unincorporated association. In this factual context, the lack of indicia of a written or oral agreement to form an entity separate from the Ermert hunters' individual statuses supported the hunters' assertions of their lack of intent to form an unincorporated association.
Distinguishably, WARN presents itself as an association in the lawsuit before this court. It is not disputed that Dr. and Mrs. *729 Palazzo participate in WARN. Even if the organization's active membership dwindled in the intervening years since its formation in 1996, an association can consist of two people. See Ermert, 559 So.2d at 473. In contrast to Ermert, the Palazzos and any other individual members involved in the group "conceive[d] of their creation as a being or thing separate from themselves." Ermert, 559 So.2d at 474. WARN never completed the filing of its articles of incorporation; however, the formation of the articles indicates an intent to form WARN's mission statement.[2] Moreover, Dr. Palazzo's deposition testimony revealed that WARN was active as an organization after a Gaylord chemical spill of 1995. The fact that Dr. and Mrs. Palazzo constituted the only working members of WARN does not, in and of itself, vitiate WARN's status as an association. Nor does the fact that no meetings with other members were held after 1996 or 1997 negate WARN's separate status.
Accordingly, we find that the trial court erred in maintaining WPEC's exception based on the objection of no right of action against WARN.

SUPPLEMENTAL AND AMENDING PETITION
On July 8, 2002, WARN filed a supplemental and amending petition adding Lynne G. Palazzo and Dr. Anthony Palazzo as petitioners. WPEC filed an opposition to the addition of the Palazzos as individual parties in the lawsuit, asserting that the peremptory deadline for filing for judicial review passed as of July 2000. It was also averred that the Palazzos could not be substitutes for a nonexistent entity. The trial court judgment pronounced that "the opposition asserted by [WPEC] to the first supplemental and amending petition filed by [WARN], Lynne G. Palazzo, and Dr. Anthony Palazzo is granted and leave to file said supplemental and amending petition is denied." The trial court stated in oral reasons for judgment that the amended petition could not relate back to the original petition because WARN was not a juridical entity within the meaning of the law. Having contrarily recognized WARN's status as a juridical entity on appeal, we next address the viability of the addition of the Palazzos pursuant to WARN's supplemental and amending petition. Specifically, we review the question of prescription or peremption of the actions filed.
Louisiana Code of Civil Procedure article 1153 states: "When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." In Giroir v. South Louisiana Medical Center, Division of Hospitals, 475 So.2d 1040, 1044 (La.1985), the Louisiana Supreme Court held that an amendment adding or substituting a plaintiff should be allowed to "relate back" to the original petition if: 1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; 2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; 3) the new and the old plaintiffs *730 are sufficiently related so that the added or substituted party is not wholly new or unrelated; and 4) the defendant will not be prejudiced in preparing and conducting his defense. Giroir, 475 So.2d at 1044. Moreover, this court has pronounced that the relation back theory also applies to claims governed by the peremptive period. Southside Civic Association, Inc. v. Warrington, 93-0890 (La.App. 1 Cir. 4/8/94), 635 So.2d 721, 724, writ denied, 94-1219 (La.7/1/94), 639 So.2d 1168.
The court in Giroir related back the addition of two major children to the surviving spouse's survival action and wrongful death action for damages against several physicians and South Louisiana Medical Center. It was observed that the actions by the children of Mrs. Giroir stemmed from the same conduct, transaction, or occurrence set forth in the original pleading relative to the medical malpractice and resulting death of the children's mother. Moreover, the defendants knew and had record of, or should have known of, the existence and involvement of the children. Finally, it was noted that the amendment was filed only ten days after the original petition. Giroir, 475 So.2d at 1045.
Contrarily, in Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060 (La.App. 1st Cir.1990), writ denied, 567 So.2d 109 (La.1990), the original corporate plaintiff filed an action alleging damages for breach of contract. This court did not construe an amending pleading by an individual party who alleged damages, ex delicto, to relate back to the purported breach of contract between two corporations. Spencer-Wallington, Inc., 562 So.2d at 1063-1064. In Delmore v. Hebert, 99-2061 (La.App. 1 Cir. 9/22/00), 768 So.2d 251, a supplemental and amending petition filed by an additional guest passenger against a defendant was also deemed not to relate back sufficiently for the purpose of defeating prescription. So too, in Baton Rouge Association of School Employees, Local 100 Service Employees International Union v. East Baton Rouge Parish School Board, 98-0526 (La.App. 1 Cir. 4/1/99), 729 So.2d 1154, 1157, writ denied, XXXX-XXXX (La.7/2/99), 747 So.2d 19, this court upheld an exception raising the objection of prescription in a case in which the amending petition by an individual was filed more than two years after the petition by other individuals to which it attempted to relate back. The belated filing of the amending petition was construed by the court to fail the fourth prong of the Giroir test because it would prejudice the defendant in conducting its defense.
In the case sub judice, the amending petition on behalf of Dr. and Mrs. Palazzo sought to add the two individuals who constituted the backbone of WARN. Their claims against WPEC paralleled the allegations presented in the original petition by WARN. The first three criteria established in Giroir, supra, are satisfied.
The single protective purpose of the peremptive statute that might be impacted is the fact that the amending petition was not filed until approximately two years after WARN filed its petition. Compare Giroir, 475 So.2d at 1045. The passage of time between the filing of the original petition and the amended petition generally weighs against the relating back of the amendment due to the general prejudice to the defendant. Id.; Baton Rouge Association of School Employees, Local 100 Service Employees, 98-0526 at p. 5, 729 So.2d at 1157. Such is the factual status herein. While the close relationship of the Palazzos to WARN and their actions on behalf of the association would mitigate any conceivable prejudice to WPEC in its defense, we have today decided that the relationship is independent *731 enough to recognize WARN's separate status. Although, WPEC was certainly aware of the existence and heavy involvement of both of the Palazzos (indeed, WPEC took the position that WARN did not have an independent associational identity beyond the individual Palazzos), we have found differently. The argument that the defendant would be prejudiced in conducting its defense is much weaker than in Baton Rouge Association of School Employees, Local 100 Service Employees International Union; nevertheless, the extensive time delay between the original timely filed petition by WARN and the supplemental and amending petition to add the Palazzos fails to satisfy the fourth variable enunciated in Giroir. Avoidance of confusion and needless litigation time do become serious factors. The supplemental and amending petition simply becomes a complicating factor that would prejudice WPEC in preparing and conducting its defense. Accordingly, the trial court judgment denying the addition of the Palazzos as individual plaintiffs is affirmed.

CONCLUSION
The maintenance by the trial court of the exception based on the peremptory objection of no right of action is reversed. The trial court's grant of the opposition to the filing of the supplemental and amending petition, as well as of the trial court's denial of WARN's supplemental and amending petition is affirmed. This case is remanded to the trial court for further proceedings consistent with this decision, including consideration of the issue of Washington Parish Energy Center's exception raising the objection of lack of procedural capacity, which is no longer moot. All costs associated with this appeal are assessed against Washington Parish Energy Center.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] Mrs. Palazzo's first name appears as both "Lynn" and "Lynne" in the pleadings.
[2] Article 2. PURPOSE of the Articles of Incorporation states that it was organized "for the sole purpose of providing an environmental voice in Washington Parish to address environmental related concerns of all citizens from all over the Parish with the intent of taking steps to help improve the quality of the air we breathe and the water we drink. The corporation plans to get the citizens involved in hopes of minimizing the impact of poor environmental practices and to work with the State and local agencies monitoring permit applications, public hearings and public concerns, etc. as well as related purposes."